IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEONARD MICHAEL SAVAGE, | § | |
| TDCJ #433630, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0772 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Leonard Michael Savage (TDCJ #433630) has filed a petition under 28 U.S.C. § 2254, seeking a federal writ of habeas corpus to challenge the calculation of his sentence following a parole revocation. He has filed a memorandum of law in support of his petition. (Doc. # 2). The respondent has answered with a motion for summary judgment, arguing that Savage is not entitled to relief. (Doc. # 16). Savage has filed a reply and a motion for an evidentiary hearing. (Docs. # 18, # 19). After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

## I.   BACKGROUND

Savage is presently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") as the result of more than one criminal conviction. As it pertains to the pending petition, a Harris County grand jury

returned an indictment against Savage in cause number 449268, charging him with burglary of a habitation with intent to commit theft.  The State enhanced that indictment with allegations that Savage had at least two prior felony convictions, one for felony possession of heroin in 1975 and another for burglary of a habitation in 1981.  Savage pleaded guilty as charged in the indictment and acknowledged that the enhancement allegations were true. On September 19, 1986, the 177th District Court of Harris County, Texas, sentenced Savage to serve thirty-five years' imprisonment.

Savage does not challenge any of his underlying criminal convictions here.  Instead, Savage challenges the calculation of his sentence following more than one parole revocation.[1]  In particular, Savage complains that prison officials have illegally extended the thirty-five year sentence that he received in 1986 by forfeiting credit for good conduct (*i.e.*, "good-time credit") earned by him while previously in prison and by refusing to award him

---

[1]  There are two ways in which a prisoner becomes eligible for early release from confinement under Texas law.  The first is by "parole" and the second is "mandatory supervision" release. "Parole" means "the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division."  TEX. GOV'T CODE § 508.001(6) (Vernon 2004).  "Mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division."  TEX. GOV'T CODE § 508.001(5).  Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced."  *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007).  Regardless of the distinction, once an inmate is released to mandatory supervision, he is considered to be on parole.  *See Jackson*, 475 F.3d at 263, n.1 (citing TEX. GOV'T CODE § 508.147(b); *Coleman v. Dretke*, 395 F.3d 216, 219, n.1 (5th Cir. 2004), *cert. denied*, 546 U.S. 938 (2005)).

2

any credit for the time he spent out of custody on parole (*i.e.*, "street-time credit").[2]  Because Savage has been in and out of custody several times since his conviction in 1986, his parole history is summarized briefly below along with relevant changes in Texas law concerning the restoration of good-time and street-time credit.

A.    **Savage's Parole History**

After serving approximately three years of the thirty-five year sentence that he received for burglary of a habitation with intent to commit theft in 1986, Savage was released to parole on November 9, 1989.  (Doc. # 16, Exhibit C at 1-2).  The record reflects that, on December 15, 1989, Savage pleaded guilty in the 339th District Court of Harris County, Texas, in cause number 55037, to charges of burglary of a habitation with intent to commit theft.  Savage received a fourteen-year prison sentence in that case.  His parole was revoked shortly thereafter on February 5, 1990.  (Doc. # 16, Exhibit C at 3).

Savage was released to parole again on January 17, 1992.  (Doc. # 16, Exhibit C at 4-5).  The record reflects that Savage pleaded guilty on October 26, 1992, in the 228th District Court of Harris County, Texas, to charges of burglary of a habitation with intent to commit theft in cause number 643834.  On that same day, Savage pleaded guilty in cause number 647569 to charges of heroin possession.  Savage received twenty-five year prison terms for each offense.  Savage's parole was revoked again on March 18, 1993.  (Doc. # 16, Exhibit C at 6).

---

[2]      "Street-time credit refers to calendar time a person receives towards his sentence for days spent on parole or mandatory supervision." *Ex parte Spann*, 132 S.W.3d 390, 392 n.2 (Tex. Crim. App. 2004).

On September 1, 1995, the Texas legislature eliminated the discretion to restore good-time credit forfeited upon a revocation of supervised release.  *See* TEX. GOV'T CODE § 498.004(b) (providing that "[o]n the revocation of parole or mandatory supervision of an inmate, the inmate forfeits all good conduct time previously accrued . . . . The department may not restore good conduct time forfeited on a revocation").  After this change in the law, Savage was released on parole for a third time on October 10, 1996.  (Doc. # 16, Exhibit C at 7-8).  Four years later, the Parole Board issued a warrant for Savage's arrest on October 23, 2000, citing violations of the terms of his release.  (*See id*. at 10).

On September 1, 2001, before Savage's parole was revoked for the third time, Texas amended the statute governing credit for street time following the revocation of a prisoner's supervised release.  TEX. GOV'T CODE ANN. § 508.283.  Under the amended version of this statute, certain inmates whose parole was revoked after the statute's effective date of September 1, 2001, were entitled to some street-time credit.  *See id*. § 508.283(c).  On April 6, 2006, Savage's parole was revoked a third time.  (Doc. # 16, Exhibit C at 9).  Upon his return to prison, officials determined that Savage was not entitled to any street-time credit for the time he had spent out on parole and that he was further not entitled to any restored good-time credit.  Savage remains in prison at Jordan Unit in Pampa, Texas.[3]

---

[3]    The petitioner was convicted of his underlying offenses in Harris County, Texas.  When he filed the pending petition, he was in custody at a facility in Huntsville.  Therefore, although he is no longer in custody within this district, this Court retains jurisdiction over his pending petition.  *See Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

4

### B.      Savage's Claims for Federal Habeas Corpus Relief

In his pending federal habeas corpus petition, Savage argues that he is entitled to relief from his sentence because, by denying him previously earned good-time credit, prison officials have unlawfully increased the thirty-five year sentence that he received in cause number 449268, for burglary of a habitation with intent to commit theft in 1986. Liberally construed, Savage argues that prison officials have unlawfully extended the thirty-five year sentence that he received in 1986 in violation of due process and the prohibition against ex post facto laws.[4] Savage also claims that he has been denied street-time credit without due process.

The respondent has filed a motion for summary judgment, arguing that Savage's challenge to the calculation of his sentence has no merit and that he is not entitled to relief under the federal habeas corpus statutes.[5] Savage has filed a response and he seeks an evidentiary hearing in this matter. The parties' contentions are addressed below under the governing federal habeas corpus standard of review.

------

[4]      The petitioner proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See id.* at 521.

[5]      The respondent argues that the petition is barred by the governing statute of limitations found in 28 U.S.C. § 2244(d)(1)(D), which expires one year from the time that a petitioner knew or should have known of the factual predicate for his claims. The Court declines to address the argument because the respondent fails to establish with certainty when Savage knew or should have known about the factual predicate for his claims.

## II.  **STANDARD OF REVIEW**

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication.  28 U.S.C. § 2254(b).  It appears from the record that Savage's claims concerning the calculation of his sentence were raised and rejected by the Texas Court of Criminal Appeals on state habeas corpus review.  *See Ex parte Savage*, No. 17,808-03.  To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

1.    was contrary to, or involved an unreasonable application of,
       clearly established Federal law, as determined by the Supreme

6

Court of the United States; or

2.      was based on an unreasonable determination of the facts in light
        of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing

that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate

decision, not every jot of its reasoning") (citation omitted), *cert. denied*, 535 U.S. 982

(2002).

Claims presenting pure questions of law and mixed questions of law and fact are

governed by § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*,

534 U.S. 885 (2001).  The Supreme Court has clarified that "clearly established Federal law"

or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta,"

of decisions from the United States Supreme Court "as of the time of the relevant state-court

decision." *Carey v. Musladin*, — U.S. —, —, 127 S. Ct. 649, 653 (2006) (quoting *Williams*

*v. Taylor*, 529 U.S. 362, 412 (2000)).  A state court decision is "contrary to" clearly

established precedent if the state court arrives at a conclusion opposite to one reached by the

Supreme Court on a question of law or if the state court decides a case differently from the

Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-

13. A state court decision is an "unreasonable application" of clearly established precedent

if the state court identifies the correct governing legal principle from the Supreme Court's

decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Questions of fact are governed by § 2254(d)(2).  *See Martin*, 246 F.3d at 475.   In

addition, a state court's factual findings are entitled to deference on federal habeas corpus

review and are presumed correct under 28 U.S.C. § 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework that controls this case.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). The petitioner's claims are discussed further below under the applicable law and the liberal theory of construction that governs review of all *pro se* pleadings.

## III.   DISCUSSION

### A.   Forfeiture of Good-Time Credit

Savage challenges the refusal of prison officials to restore previously earned good-time credit that was forfeited upon the revocation of his supervised release pursuant to § 498.004(b) of the Texas Government Code and TDCJ Administrative Directive AD-04.80. Savage maintains that, by refusing to restore these forfeited credits under the law that was in place at the time of his offense in 1986, prison officials have unlawfully lengthened his sentence and increased his punishment in violation of his right to due process and the prohibition against ex post facto laws.  As discussed separately below, neither theory has merit.

### 1. There is No Due Process Right to the Restoration of Previously Earned Good-Time Credit Forfeited Following a Parole Revocation

Savage complains that prison officials violated his right to due process by refusing to restore good-time credits that he earned while previously incarcerated in TDCJ, before his release from prison onto parole one or more times, which good-time credits were forfeited upon his most recent parole revocation in 2006. The United States Constitution does not guarantee an inmate good-time credit for satisfactory behavior while in prison. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). Thus, as an initial matter, whether Savage is entitled to good-time credit is a question of Texas law. This analysis requires a brief overview of the Texas good-time credit scheme.

A Texas inmate does not earn good-time credit simply for good behavior. A Texas inmate may earn good-time credit only if prison officials find that the inmate is actively engaged in an agricultural, vocational, or educational endeavor, in an industrial program or other work program, or in a treatment program. *See* TEX. GOV'T CODE ANN. §§ 498.003(a), (d). Good-time credit serves two functions in Texas: (1) it determines a prisoner's mandatory supervision release date (if he is eligible for early release on mandatory supervision parole); and (2) depending on the nature of his underlying offense, it advances a prisoner's date of eligibility for early release on discretionary parole. *See* 5 JOHN M. SCHMOLESKY, TEXAS CRIMINAL PRACTICE GUIDE: PAROLE § 101.03[3] (2007). Thus, good-time credit does not reduce an inmate's sentence and relates only to his eligibility for early release. *See* TEX. GOV'T CODE ANN. § 498.003(a); *Ex parte Henderson*, 645 S.W.2d 469,

472 (Tex. Crim. App. 1983).

Texas inmates are classified for purposes of good-time earning eligibility, with trusties occupying the highest level. *See* 5 SCHMOLESKY, TEXAS CRIMINAL PRACTICE GUIDE: PAROLE § 101.03[3] (citing TEX. GOV'T CODE ANN. § 498.003(b)).   Other inmates are classified as Level I, II, and III, with Level III representing the lowest good-time earning status. *See id*.  Depending on his classification, an inmate may be eligible to accrue good-time credit at the following rate:

> (1)   20 days for each 30 days actually served while the inmate is classified as a trusty, except that the department may award the inmate not more than 10 extra days for each 30 days actually served;
>
> (2)   20 days for each 30 days actually served while the inmate is classified as a Class I inmate; and
>
> (3)   10 days for each 30 days actually served while the inmate is classified as a Class II inmate.

TEX. GOV'T CODE ANN. § 498.003(b).  Class III prisoners and those inmates who are on parole or mandatory supervision do not accrue any good-time credit. *Id.* at § 498.003(c).

At all times relevant to this case, Texas law has provided that good-time credit earned by inmates is a privilege and not a right. *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (1985); *see also* TEX. GOV'T CODE ANN. § 498.003(a) (Vernon 2004) (governing the accrual of good-time credit today).  Texas law has long held that, as a privilege, good-time credit may be forfeited either by violating prison disciplinary rules while in custody or by violating the terms and conditions of his conditional release on parole. *See Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex. Crim. App. 1983). In addition, a Texas inmate may also forfeit good-

time credit any time a state or federal court dismisses as "frivolous or malicious" a lawsuit filed by the inmate while in custody.  *See* Tex. Gov't Code Ann. § 498.0045(a); *Ex parte Rieck*, 144 S.W.3d 510 (Tex. Crim. App. 2004).

Savage does not dispute that prison officials had the right to forfeit his previously earned good-time credits upon the most recent revocation of his parole in 2006.  Indeed, under the law in effect at the time of the offense in 1986, Texas law clearly authorized the forfeiture of previously earned good-time credit upon the revocation of an inmate's parole or mandatory supervision.  *See* Tex. Rev. Civ. Stat. Ann. art. 6181-1, § 4; *see also* Doc. # 16, Exhibit D (containing copies of TDCJ Administrative Directive AD 04.80 governing good conduct time from 1985 through 1988).  Under that law, however, the director of prisons retained some discretion to restore those forfeited good-time credits under certain circumstances:

> Upon revocation of parole or mandatory supervision of an inmate, the inmate loses all good conduct time previously accrued, but upon return to the department the inmate may accrue new good conduct time for subsequent time served in the department. The director may, however, restore good conduct time forfeited upon revocations not involving new criminal convictions after an inmate has served a reasonable period of good behavior in the department, to be no less than three months, subject to rules adopted by the department.

*Id*.  In 1987, the Texas legislature adopted a measure that allowed the Texas Board of Criminal Justice to adjust its policy on good-time restoration depending on the need to relieve prison overcrowding.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1075 (5th Cir. 1997) (describing the provision, which allowed the Texas Board Criminal Justice to review it's policies relating to good-time credit restoration on an annual basis).  As the respondent notes,

11

the Texas legislature amended the statute governing forfeiture of good-time credit  in 1995 and formally discontinued any discretion to restore previously earned good-time credits. The amended statute provides that, once an inmate's parole or supervised release is revoked, the inmate may accrue new good-time credit upon his return to prison, but that prison officials could no longer restore previously earned good-time forfeited upon the revocation:

> On the revocation of parole or mandatory supervision of an inmate, the inmate forfeits all good conduct time previously accrued.  On return to [TDCJ] the inmate may accrue new good conduct time for subsequent time served in [the Correctional Institutions Division].  The department may not restore good conduct time forfeited on a revocation.

Acts 1995, 74th Leg., ch. 249, § 4 (effective Sept. 1, 1995), codified as amended at TEX. GOV'T CODE ANN. § 498.004(b).

Savage insists that he is eligible for restored good-time credit under the former statute that was in place prior to 1995, and that, by refusing to restore previously earned good-time credits forfeited upon the revocation of his supervised release, prison officials have improperly applied the 1995 amended statute found at § 498.004(b) of the Texas Government Code.  To the extent that Savage relies upon the Due Process Clause for relief, he cannot prevail unless he shows that he had a protected liberty interest in having his forfeited good-time credit restored.[6]  Savage fails to do so here.

---

[6]    The Fourteenth Amendment of the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The forfeiture of good-time credits does not result in the loss of life and it is also settled that Texas prisoners have no property interest in their accumulated good-time credits.  *Ex parte Montgomery*, 894 S.W.2d 324, 328-29 (Tex. Crim. App. 1995).  To prevail with a claim under the Due Process Clause, therefore, a Texas inmate must demonstrate that he has a liberty interest in the good-time credit at issue.

Prison inmates are entitled to protection under the Due Process Clause only when an official action infringes upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). A convicted prisoner does not have a constitutional right to conditional release before the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). To the extent that Savage's claim rests on the existence of an interest created by state law, it is settled that only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Sandin*, 515 U.S. at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996).

As noted previously, Texas law provides that the good-time credit an offender accumulates "applies only to eligibility for parole or mandatory supervision . . . and does not otherwise affect an inmate's term [of imprisonment, *i.e.*, his sentence]." TEX. GOV'T CODE ANN. § 498.003(a). The existence of a protected liberty interest in good-time credits depends on whether those credits apply towards an inmate's eligibility for release on parole or mandatory supervision. Texas inmates who are eligible for mandatory supervision have a constitutional expectancy of early release under the Texas mandatory supervision scheme and a protected liberty interest in the good-time credits that they have earned. *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) (addressing the mandatory supervision scheme in

place prior to September 1, 1996); *see also Teague v. Quarterman*, 482 F.3d 769 (5th Cir.

2007) (addressing the mandatory supervision scheme in place before and after September 1,

1996).  The Fifth Circuit has clarified that no amount of good-time credit may be forfeited

as the result of prison disciplinary proceedings against a Texas inmate who is eligible for

early release on mandatory supervision *unless* the inmate is afforded due process.  *See*

*Teague*, 482 F.3d at 778.

In contrast to the expectation of early release accorded inmates eligible for mandatory

supervision, there is no protected liberty interest in the attainment of parole in Texas.  The

United States Supreme Court has recognized that the states have no duty to establish a parole

system and that there is no constitutional right to be released on parole before the expiration

of a valid sentence.  *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987)

(explaining that "statutes or regulations that provide that a prole board 'may' release an

inmate on parole do not give rise to a protected liberty interest"); *Greenholtz v. Nebraska*

*Penal Inmates*, 442 U.S. 1, 11 (1979) (holding that a statute which "provides no more than

a mere hope that the benefit will be obtained . . . is not protected by due process").  In light

of this authority, the Fifth Circuit has recognized repeatedly that the Texas parole statutes

create no constitutional right to release on parole because they encourage no expectancy of

early release.  *See Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir.), *cert. denied*, 454 U.S.

854 (1981) (Texas parole statute does not create a protectable expectancy of release, as

recognized in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442

U.S. 1, 7 (1979), but rather creates nothing more than a hope of parole); *see also Allison v.*

14

*Kyle*, 66 F.3d 71, 74 (5th Cir. 1995); *Orellana v. Kyle*, 65 F.3d 29 (5th Cir. 1995); *Gilbertson v. Texas Board of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993); *Creel v. Keene*, 928 F.2d 707, 712 (5th Cir.), *cert. denied*, 501 U.S. 1210 (1991). It is settled that Texas inmates "have no protected liberty interest in parole." *Johnson*, 110 F.3d at 308. Thus, Texas inmates who are eligible for parole, but not for mandatory supervision, have no protected liberty interest in their good-time credits.

Even if good-time credits are earned, they may be forfeited under certain circumstances and there is no right, let alone an automatic right, to reinstatement of these credits. A review of the statute that previously governed the restoration of forfeited good-time credits, whether that sanction occurred as the result of a prison disciplinary proceeding or the result of a parole or mandatory supervision revocation, shows that the restoration of those previously earned good-time credits was always speculative and discretionary. *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4, codified as amended at TEX. GOV'T CODE ANN. § 498.004(b). Because the pre-1995 statutory scheme created no "unilateral hope" or "absolute right" to the restoration of these forfeited good-time credits, Texas courts have held that state prisoners have no protected liberty interest in the restoration of previously earned good-time credits. *See Ex parte Montgomery*, 894 S.W.2d 324, 328-29 (Tex. Crim. App. 1995); *Henderson*, 645 S.W.2d at 472. Acknowledging that Texas prison authorities formerly possessed complete and unfettered discretion over the decision whether or not to restore these credits, the Fifth Circuit has also confirmed that Texas inmates have no

15

protected liberty interest in the restoration of those forfeited credits.[7]  *See Hallmark v. Johnson*, 118 F.3d 1073, 1079-80 (5th Cir. 1997) (citing *Greenholtz*, 442 U.S. at 11); *Turner v. Johnson*, 46 F. Supp. 2d 655, 671 (S.D. Tex. 1999).

Absent a showing that Savage's claim implicates a protected liberty interest, the failure or refusal to restore forfeited good-time credits does not violate the Due Process Clause of the United States Constitution.  *See Hallmark*, 118 F.3d at 1079-80; *Turner*, 46 F. Supp. 2d at 671.  Alternatively, even assuming there was a liberty interest in forfeited good-time credit, Savage does not allege or show that he lacked notice or that he was denied a fair hearing after he violated the conditions of his supervised release.  In that respect, Savage does not challenge the validity of any of his parole revocation proceedings.  For these reasons, Savage does not demonstrate that the state court's decision to deny this claim was incorrect or that he is entitled to relief from a due process violation stemming from the failure to restore good-time credits earned prior to his release on parole.

2.   **The Refusal to Restore Previously Earned Good-Time Credit Forfeited Following a Parole Revocation is not an Ex Post Facto Violation**

Savage alleges further that prison officials have retroactively applied the 1995 statute

---

[7]   It bears repeating that, under the statute that has been in place since 1995, Texas inmates have no right to the restoration of forfeited good-time credits.  *See* TEX. GOV'T CODE ANN. § 498.004.  Even under the more favorable statutory scheme formerly in place prior to 1995, Savage had no protected liberty interest and therefore no due process right to the restoration of forfeited good-time credits because decisions whether to restore good-time credits under the former scheme were discretionary.

codified at § 498.004(b) of the Texas Government Code, which prohibits the restoration of previously earned good-time credit forfeited as the result of a parole or mandatory supervision revocation, even though this statute was not in effect when the offense and conviction occurred. By refusing to restore his previously earned good-time credit, Savage maintains that his sentence has increased in violation of the prohibition against ex post facto laws.

Article I, Section 10 of the United States Constitution provides that "[n]o state shall . . . pass any . . . ex post facto [l]aw." The Supreme Court has construed this to mean that states are prohibited from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981). Thus, the following two elements must be present for an ex post facto violation to occur: "(1) a law must be retrospective, that is, it must apply to events occurring before its enactment, and (2) the new law must create a sufficient risk of increasing the punishment attached to the defendant's crimes." *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir. 2004) (citations and quotation omitted). Where a statute applies retroactively, the existence of an ex post facto violation depends on whether the statute constitutes additional criminal punishment for the crimes previously committed. *See Kansas v. Hendricks*, 521 U.S. 346, 371 (1997).

Savage cannot show that the complained of law constitutes a retrospective change to his detriment because there has been no increase in his punishment. As referenced above, since 1977, Texas law has specifically recognized that good-time credit applies only to an

17

inmate's eligibility for parole or mandatory supervision, and not to the length of his sentence. *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4, codified as amended at TEX. GOV'T CODE ANN. § 498.003(a).  Because good-time credit has no effect on the length of sentence imposed, an inmate's punishment is not increased by the forfeiture of previously earned time credits.  *See Hallmark*, 118 F.3d at 1077;  *Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994).  Absent a showing that his punishment was increased by the failure or refusal of prison officials to restore the forfeited good-time credit, Savage fails to establish an ex post facto violation or to show that the state court erred by rejecting this claim on state habeas corpus review.

### B.    Denial of Street-Time Credit

Savage also seeks restoration of street-time credit based on § 508.283 of the Texas Government Code.  Savage apparently contends that prison officials have wrongfully denied him these credits in violation of his right to due process.  It appears from the record that this claim was rejected implicitly on state habeas corpus review, without any specific findings. *See Ex parte Savage*, No. 17,808-03.  For reasons set forth below, Savage fails to show that the state court's decision was incorrect or that was entitled to street-time credit upon his return to prison following the most recent revocation of his parole.

According to Texas law, an inmate whose supervised release was revoked before September 1, 2001 was not entitled to credit against his sentence for the street time he had accumulated following the date of his release to the date of his revocation.  *See* TEX. GOV'T CODE ANN. § 508.283(b) (Vernon 2004), *formerly codified at* TEX. CRIM. PROC. CODE art.

42.18, § 14(a).  Therefore, under the statutory scheme in place prior to September 1, 2001, Texas inmates had no constitutionally protected liberty interest in retention of accumulated street-time credit.  *See Thompson v. Cockrell*, 263 F.3d 423, 426 (5th Cir. 2001).  Under the statute as amended, however, certain inmates whose supervised release was revoked on or after September 1, 2001 are entitled to some street-time credit upon their return to TDCJ.  *See* TEX. GOV'T CODE ANN. § 508.283(c) (Vernon 2004); *Ex parte Spann*, 132 S.W.3d 390, 392 (Tex. Crim. App. 2004) (observing that § 508.283(c) of the Texas Government Code and its provision awarding street-time credit applies to revocations occurring on or after September 1, 2001).

The Fifth Circuit has acknowledged the possibility that the amended statutory scheme found at § 508.283(c) may have created a protected liberty interest in the retention of street-time credit by some prisoners whose supervised release was revoked after September 1, 2001.  *See Whitley v. Dretke*, 111 Fed. App'x 222, 223, 2004 WL 1895117 (5th Cir. 2004) (unpublished).  Savage's latest parole revocation occurred in 2006, meaning that the amended version of § 508.283(c) applies to him in this instance.  Even assuming that the amended statute creates a protected liberty interest, however, Savage fails to show that he is eligible for the restoration of any street-time credit under this amended statutory scheme.

Before a Texas inmate can be entitled to restoration of street-time credit under the above-referenced amended statutory scheme, he must satisfy two conditions.  Under the first condition, the inmate must (a) not be serving a sentence for and (b) must not previously have been convicted of a crime described in § 508.149(a) of the Texas Government Code, which

19

lists a variety of aggravated offenses.  *See* TEX. GOV'T CODE § 508.283(b).  If an offender

satisfies this first condition, then he may be entitled to some street-time credit if he satisfies

a second condition, which depends in turn on the amount of time remaining on the inmate's

sentence at the time that the revocation warrant is issued.  *See* TEX. GOV'T CODE

§ 508.283(c); *Spann*, 132 S.W.3d at 393 & n.6.

      The respondent does not dispute that Savage satisfies the first condition found in

§ 508.283(b) because, although he is a habitual felon with a long list of prior offenses, he

does not have a conviction for one of the aggravated crimes found in § 508.149(a) of the

Texas Government Code.  The respondent maintains, nevertheless, that Savage is not entitled

to street-time credit because he fails to satisfy the second criterion found in 508.283(c).  The

second criterion for street-time credit requires that the "remaining portion" of the offender's

sentence be less than the amount of time the offender has spent out of custody on parole or

mandatory supervision.  *See Spann*, 132 S.W.3d at 392-393, 394-395, 396.  That is, if the

"remaining portion"" of an inmate's sentence is greater than the time spent on parole or

mandatory supervision, he may not receive credit for that street-time.  *Ex parte Keller*, 173

S.W.3d 492, 494 (Tex. Crim. App. 2005).  On the other hand, if the remaining portion of his

sentence is less than the time spent on parole or mandatory supervision, that inmate will

receive credit for all of his street time.  *Id.*

      The remaining portion of the sentence for purposes of § 508.283(c) is calculated as

the number of days of the sentence remaining as of the offender's date of release to parole

less the number of days the offender spent on parole.  *See id.* at 395.  Under the express

terms of the statute, the amount of the time spent on parole is deemed to end on the date the revocation warrant issues. TEX. GOV'T CODE § 508.283(c); *Spann*, 132 S.W.3d at 393 & n.6. Thus, under the second criterion found in § 508.283(c), an offender is entitled to street-time credit for the time spent on parole if, at the time the revocation warrant is issued, he has already served over half of his remaining sentence. *Ex parte Mabry*, 137 S.W.3d 58, 64-65 (Tex. Crim. App. 2004).

The respondent provides records from Savage's most recent parole revocation proceeding, which commenced on October 23, 2000, when the revocation warrant issued. (Doc. # 16, Exhibit C). The respondent also presents an affidavit from Terry Laskie, who works for TDCJ as a Program Specialist in the Classification and Records Division. (Doc. # 16, Exhibit E). According to these records, when Savage was last released on parole on October 10, 1996, the thirty-five year sentence at issue was set to discharge on March 20, 2022, as long as Savage satisfied all the conditions of his release. (Doc. # 16, Exhibit C at 7-8). At the time he was released on parole, Savage "owed 25-years 5-months and 10-days" on the thirty-five year sentence. (Doc. # 16, Exhibit E, Laskie Affidavit at ¶ 2). When the parole revocation warrant issued on October 23, 2000, Savage still "owed 21-years 2-months and 27-days" on that sentence. (*See id.*).

The record shows that, when the parole warrant issued in Savage's case, he still had a substantial remaining portion of his thirty-five year sentence to serve. In that regard, when the parole revocation warrant issued on October 23, 2000, the record clearly shows that Savage had more than twenty years remaining and, therefore, he had not yet served half of

21

his thirty-five year sentence.  Because the remaining portion of Savage's sentence exceeded the amount of time that he served on parole, he is not entitled to any restored street-time credit under § 508.283(c).  Under these circumstances, Savage does not meet the second condition for street-time credit found in § 508.283(c) and cannot show that he was deprived of these credits in violation of the Due Process Clause following the revocation of his parole.

In summary, the state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States; nor did it otherwise involve an unreasonable application of clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  Accordingly, Savage fails to show that he is entitled to a federal writ of habeas corpus on any of his claims.

## IV.   <u>EVIDENTIARY HEARING</u>

Savage has made more than one request for an evidentiary hearing in this case.  (Docs. # 3, # 19).  Savage does not specify what issue he wishes to address at an evidentiary hearing.  To the extent that Savage failed to develop any facts related to his claims in state court, the decision whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2).  Under this statute, if an applicant "failed to develop the factual basis of a claim in State court proceedings," then the federal habeas corpus court may hold an evidentiary hearing *only* if:

    (A)    the claim relies on —

            (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii)     a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Savage makes no mention of 28 U.S.C. § 2254(e)(2) in his pleadings. Nor does he otherwise attempt to show that he is entitled to an evidentiary hearing under this statute.

The decision whether to conduct an evidentiary hearing is committed to this Court's discretion. *See Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus" proceedings); *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims." *Robinson*, 151 F.3d at 268. "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rule 8 of the Rules Governing Section 2254 Cases. This Court has been able to resolve all issues raised in this case by referring to the pleadings, the state court record, and the exhibits. Savage's request for an evidentiary hearing is therefore denied.

## V.  CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an

appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

24

The Court has carefully considered all of the pleadings and the applicable law.  Based on this review, and for the reasons set forth above, the Court concludes that jurists of reason would not debate whether any of the procedural rulings are correct, or whether any assessment of the above-referenced constitutional claims is debatable or wrong.  Because the petitioner has failed to make "a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue in this case.

## VI.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Doc. # 16) is **GRANTED**.

2.      The petitioner's motion for an evidentiary hearing (Doc. # 19) is **DENIED**.

3.      The federal habeas corpus petition is **DENIED** and this case is **DISMISSED** with prejudice.

4.      A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas on September 27, 2007.

Nancy F. Atlas
United States District Judge